UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LORENZO WILLIAMS,　　　　　　　Case No. 25-cv-11858

　　　Plaintiff,　　　　　　　　　F. Kay Behm
v.　　　　　　　　　　　　　United States District Judge

FORD MOTOR COMPANY, *et al.*,

　　　Defendants.
_____/

**OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS
TO DISMISS (ECF Nos. 14, 25) AND DISMISSING DEFENDANT
AFL-CIO FOR FAILURE TO PROSECUTE**

## I.　　PROCEDURAL HISTORY

On June 20, 2025, Plaintiff filed a complaint in this district,

alleging claims under 42 U.S.C. § 1981, the Americans with Disabilities

Act (ADA), the Michigan Civil Rights Act (ELCRA), intentional

infliction of emotional distress ("IIED"), and Section 301 of the Labor-

Management Relations Act (LMRA), 29 U.S.C. § 185, against Ford

Motor Co. ("Ford"), United Automobile, Aerospace, and Agricultural

Implement Workers of America (UAW), and AFL-CIO (Ford Motor

Company).  *See* ECF No. 13.  On November 4, 2025, Defendant UAW

filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure

1

to state a claim.  ECF No. 14.  Plaintiff filed an untimely response (ECF No. 15), to which UAW replied (ECF No. 17).  On March 25, 2026, Ford also filed a Motion to Dismiss pursuant to Rule 12(b)(6) for failure to state a claim.  ECF No. 25.  No response to that motion was filed.  The court converted a portion of that motion to one for summary judgment and ordered an additional opportunity for Plaintiff to respond; no response was received within the time offered.  Meanwhile, AFL-CIO has never appeared in this action, and though the court issued two show cause orders regarding the progress of this case against them, no proof of service has ever been filed.

The court finds that oral argument is not necessary to resolve the motions or issues presented.  For the reasons explained below, the court **GRANTS** UAW's motion to dismiss, **GRANTS** Ford Motor Co.'s motion to dismiss, **DISMISSES** AFL-CIO from this case for failure to prosecute, and closes the case.

## II.    FACTUAL BACKGROUND

The court takes the allegations in the complaint and accepts them as true.  *Laborers' Loc. 265 Pension Fund v. iShares Tr.*, 769 F.3d 399, 403 (6th Cir. 2014).  In addition, Defendant UAW supplemented the

record with documents Plaintiff refers to in his complaint. While a court generally should not consider matters outside the pleadings without converting a Rule 12(b)(6) motion to a summary judgment motion, "if a plaintiff fails to attach an instrument upon which he relies, the defendant may introduce the pertinent exhibit." *QQC, Inc. v. Hewlett-Packard Co.*, 258 F. Supp. 2d 718, 720-721 (E.D. Mich. 2003). "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document." *Id.* (citing *Weiner v. Klais & Co., Inc.,* 108 F.3d 86, 89 (6th Cir.1997); *abrogated on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)). Documents introduced by a defendant should be considered if they are "referred to in the plaintiff's complaint" and "are central to the plaintiff's claims." *Weiner,* 108 F.3d at 89. In his amended complaint, Plaintiff refers to particular documents relating to withdrawal of his grievance, his NLRB Charge, and dismissal of his NLRB Charge. ECF No. 13, PageID.101, ¶¶13-15. These documents are central to Plaintiff's complaint that the Defendant breached its duty of fair representation and the underlying documents may themselves be considered.

3

Plaintiff Lorenzo Williams began working for Ford Motor Company and became a member of UAW Local 600 at the Dearborn Truck Plant in March 2019.  ECF No. 13, PageID.100, ¶10.  In June of 2019, Ford terminated Plaintiff's employment.  *Id.* at ¶ 11.  The termination occurred during Plaintiff's 90-day probationary period.  *Id.* at ¶ 12.  Plaintiff's union, Local 600, filed a grievance over the termination.  *Id.* at PageID.100-01, ¶¶ 13-14.  However, Plaintiff was notified that the union withdrew his grievance after step 3 on July 30, 2021.  *Id.* at PageID.101, ¶13; ECF No. 14-2, PageID.130 (Withdrawal Letter).  Plaintiff sought to appeal the Union's decision.  ECF No. 13, PageID.101, ¶ 13.[1]

On January 25, 2022, Plaintiff filed a charge with the National Labor Relations Board alleging Local 600 had breached its duty of fair representation by failing to take his grievance to arbitration.  ECF No. 13, PageID.101, ¶¶ 14-15; ECF No. 14-3, PageID.131-35.  Plaintiff's

---

[1] UAW's version is slightly different: "Plaintiff never appealed the decision to withdraw his grievance under Article 33 of the UAW constitution."  ECF No. 14, PageID.116.  Because no document referred to in Plaintiff's complaint explicitly confirms or denies Plaintiff's account, the court accepts Plaintiff's version as true in this posture.

NLRB charge was dismissed on February 9, 2025. ECF No. 14-4, PageID.136.[2]

Plaintiff also alleges that in December 2023, he requested his employment file from Ford, and a Ford employee (apparently referring to some other litigation) said: "I see that he [Plaintiff] is one of the Plaintiffs at 4763." ECF No. 13, PageID.102.[3] Plaintiff does not allege that this interaction resulted in discipline, reinstatement, hiring, changes to compensation, or any other employment action.

## III. STANDARD OF REVIEW

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must "construe the complaint in the light most favorable to the [nonmoving party] . . . [and] accept all well-pled factual allegations as true." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523,

---

[2] Plaintiff also made allegations that "Plaintiff requested an extension of time within to file an appeal through the NLRB. The NLRB denied Plaintiff's Petition for Appeal noting that the time had passed. Plaintiff subsequently filed a Petition for a Late Appeal, which Petition the NLRB denied." ECF No. 13, PageID.101, ¶¶14–15. This sequence does not appear to be relevant to the merits of his claims given that the NLRB dismissal letter denied his claim on the merits. *See* ECF No. 14-4, PageID.136.

[3] No party has explained what that phrase means, but the point is irrelevant where Williams was no longer an employee of Ford, Ford has argued it does not matter, and Williams waived any response to that argument by failing to file a response brief.

527 (6th Cir. 2007); *see also Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 562 (6th Cir. 2003).  The complaint must provide "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  Moreover, the complaint must "contain[] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).  A claim has "facial plausibility" when the nonmoving party pleads facts that "allow[] the court to draw the reasonable inference that the [moving party] is liable for the misconduct alleged."  *Id.* at 678.  The factual allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief."  *League of United Latin Am. Citizens*, 500 F.3d at 527.

In evaluating the allegations in the complaint, the court must be mindful of its limited task when presented with a motion to dismiss under Rule 12(b)(6).  At the motion to dismiss stage, the court does not consider whether the factual allegations are probably true; instead the

6

court must accept the factual allegations as true, even when skeptical. *See Twombly*, 550 U.S. at 555 (a court must proceed "on the assumption that all the allegations in the complaint are true (even if doubtful in fact)"); *Neitzke v. Williams*, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations").  Indeed, in assessing the sufficiency of a complaint, the court must determine only whether "'the claimant is entitled to offer evidence to support the claims,' not whether the plaintiff can ultimately prove the facts alleged."  *See United States v. SouthEast Eye Specialists, PLLC*, 570 F. Supp. 3d 561, 574 (M.D. Tenn. 2021) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002)).

In general, when deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court's review is limited to the four corners of the pleading at issue. Fed. R. Civ. P 12(d); *see also Courser v. Michigan House of Representatives*, 404 F. Supp. 3d 1125, 1139 (W.D. Mich. 2019) (citing *Rondigo, LLC v. Twp. of Richmond*, 641 F.3d 673, 682 (6th Cir. 2011)) (noting that "[i]n general, in deciding a Rule 12(b)(6) motion to dismiss the court is limited to considering only the pleadings").  Nonetheless, it is well established that, in some

circumstances, a court may consider matters beyond the pleadings without converting the motion to one for summary judgment under Rule 56. Examples include "any exhibits attached [to the Complaint], public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008).

## IV. ANALYSIS

### A. UAW Motion To Dismiss

The court starts with the first-filed motion to dismiss by UAW (ECF No. 14). Although Plaintiff filed a response to that motion, his response was untimely. UAW's motion was filed and served on November 4, 2025, and a response was therefore due November 25, 2025. *See* ECF No. 14. Plaintiff's response was filed December 8, 2025, and provides no explanation for its lateness, nor does it include a request for an extension of time. *See* ECF No. 15.

Under Fed. R. Civ. P. 6(b), a court may extend the time to respond to a motion to dismiss after the time has expired if the party failed to act because of excusable neglect. "Neglect exists where the failure to do

8

something occurred because of a simple, faultless omission to act, or because of a party's carelessness." *Turner v. City of Taylor*, 412 F.3d 629, 650 (6th Cir. 2005) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 388 (1993). The determination of whether neglect is "excusable" is "an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer*, 507 U.S. at 395. Courts use a five-factor test to determine if a party's neglect is excusable, and consider: (1) "the danger of prejudice" to the nonmoving party, (2) "the length of the delay and its potential impact on judicial proceedings," (3) "the reason for the delay," (4) whether the delay was within the reasonable control of the moving party, and (5) whether the late-filing party "acted in good faith." *Pioneer*, 507 U.S. at 395. In weighing these factors, courts must keep in mind that excusable neglect is "a strict standard which is met only in extraordinary cases." *Nicholson v. City of Warren*, 467 F.3d 525, 526 (6th Cir. 2006). Plaintiff makes no argument that he satisfies the excusable neglect standard, so the court concludes that the third, fourth, and fifth factors all weigh against Plaintiff, that this is not an extraordinary case meriting relief, and that excusable neglect is not

9

present here. Nor, for that matter, did Plaintiff make a motion under Rule 6(b) as is generally required by that rule. *See* Fed. R. Civ. P. 6(b)(1)(B) (the court may extend the time to respond "on motion made after the time has expired"). The response brief is untimely and the court need not consider it.

With that said, the court notes that Plaintiff's response brief is deficient on its face. The brief consists solely of conclusory statements and does not include a single citation to relevant authority. Were the court to consider the brief on its merits, the court would still deem all of its arguments waived for failure to develop them in any significant manner. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones."); *Magnum Towing & Recovery v. City of Toledo*, 287 F. App'x 442, 449 (6th Cir. 2008) ("It is not the district court's [] duty to . . . develop a party's claims").

10

Any way you look at it, the result is that Plaintiff failed to substantively respond to the motion to dismiss.  A failure to respond to a motion to dismiss forfeits arguments against the issues raised in that motion.  *See Kondaur Cap. Corp. v. Smith*, 802 F. App'x 938, 946 (6th Cir. 2020) ("[A] plaintiff's failure to respond to a defendant's motion to dismiss renders any objections to the motion waived for want of prosecution.") (collecting cases).  Still, the burden to prove entitlement to relief remains with the movant.  *See Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991) ("the district court abused its discretion in dismissing Carver's complaint solely for his failure to respond to defendants' motion to dismiss.").  Because of Plaintiff's failure to respond properly, however, the court can accept Defendant's characterization of relevant facts and legal arguments, and evaluate whether those unrebutted arguments establish relief under the 12(b)(6) standard.  The "burden to respond is really an opportunity to assist the court in understanding the facts.  But if the non-moving party fails to discharge that burden -- for example, by remaining silent -- its opportunity is waived and its case wagered.  Nothing in either the Rules or case law supports an argument that the trial court must conduct its

11

own probing investigation of the record." *See Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 405 (6th Cir. 1992); *Humphrey v. United States AG Office*, 279 F. App'x 328, 331 (6th Cir. 2008) ("where, as here, plaintiff has not raised arguments in the district court by virtue of his failure to oppose defendants' motions to dismiss, the arguments have been waived.").

Under that framework, the court turns to the Union's motion. The sole count that is clearly brought against the Union is Count V for Failure to Represent, under § 301 of the LMRA, 29 U.S.C. § 185. The statute of limitations governing such actions brought under § 301 is six months. *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 169-70 (1983). The statute of limitations is measured from the date on which the employee knew or should have known of the union's or employer's final actions constituting the alleged violations, whichever occurred later. *Hollingsworth v. Ford Motor Co.*, 644 F. App'x 496, 501 (6th Cir. 2016); *Baltrusaitis v. Int'l Union*, 86 F.4th 1168, 1175 (6th Cir. 2023).[4] The Union sent the notice of withdrawal of Plaintiff's grievance on July

---

[4] UAW characterizes Plaintiff's claim as a "hybrid" § 301 claim, which in this posture Plaintiff has waived any response to and the court accepts.

30, 2021.  ECF No. 14-2, PageID.130.  Or setting aside when Plaintiff received that notice, Plaintiff was at least aware that his grievance was withdrawn when he filed the NLRB Charge on January 25, 2022.  *See* ECF No. 14-3, PageID.135.  The present action was not filed until June 20, 2025 (ECF No. 1), and Plaintiff's claim is untimely whichever date one refers to.[5]  Count V must therefore be dismissed.[6]

As for the remaining counts, a plain reading of the allegations in Counts I and II show those counts are brought only against Ford Motor Co.  Plaintiff conceded that point both by failing to timely respond to UAW's argument, and by agreeing with UAW's position in the substance of his untimely response.  ECF No. 15, PageID.148.  UAW, possibly by mistake, does not mention or address Count III for race discrimination in their motion.  But that count is likewise clearly

---

[5] The court therefore does not address the Union's exhaustion of remedies argument.  *See* ECF No. 14, PageID.124-25.

[6] "Generally, a motion under Rule 12(b)(6), which considers only the allegations in the complaint, is an inappropriate vehicle for dismissing a claim based upon a statute of limitations.  However, dismissal is warranted if the allegations in the complaint affirmatively show that the claim is time-barred.  Because the statute of limitations is an affirmative defense, the burden is on the defendant to show that the statute of limitations has run, and if the defendant meets this requirement then the burden shifts to the plaintiff to establish an exception to the statute of limitations."  *Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 464 (6th Cir. 2013).  The allegations in the complaint clearly show that the claim is time-barred, and Plaintiff waived his opportunity to respond.

13

directed only against Ford.  ECF No. 13, PageID.103 ("At all material times, Plaintiff was an employee, and Defendant was his employer."). So the court finds that each of Counts I, II, and III were not brought against UAW.

Count IV works a little differently.  It is unclear whether Plaintiff intended to assert Count IV against UAW.  But UAW did not argue that this count was not brought against them – they instead assumed that it was intended to be pleaded against them, and proceeded from there. Their argument is that Plaintiff's IIED claim against them is preempted by the LMRA: While Plaintiff's claim for intentional infliction of emotional distress is a state law tort claim, there are no allegations outside the scope of the grievance process.  The claims must therefore be viewed as claims that the union breached its duty of fair representation and preempted by the uniform federal labor law governing a union's duty of fair representation.  *See In re Glass, Molders, Pottery, Plastics & Allied Workers Int'l Union, Loc. No. 173*, 983 F.2d 725, 728–29 (6th Cir. 1993).  The court agrees that Defendant's interpretation is correct.

LMRA Section 301 preempts state law rules that substantially implicate the interpretation of the terms of collective bargaining agreements. *See Allis-Chalmers v. Lueck*, 471 U.S. 202, 210 (1985). This includes claims for intentional infliction of emotional distress that are based on the quality of a union's representation. *See Adkins v. General Motors Corp.*, 946 F.2d 1201, 1208–1213 (6th Cir. 1991) (holding that claims for emotional distress that go "to the quality of their union representation" address "issues central to the concerns of federal labor law" and are preempted). Section 301 does not unequivocally preempt claims of intentional infliction of emotional distress, and state tort claims can be maintained if they arise independently of the collective bargaining agreement and does not involve interpretation of its terms. *Gilreath v. Clemens & Co.*, 212 F. App'x 451, 462 (6th Cir. 2007). When determining whether proof of the state law claim involves the interpretation of the collective bargaining agreement, "the court is not bound by the 'well-pleaded complaint' rule, but rather, looks to the essence of the plaintiff's claim to determine whether the plaintiff is attempting to disguise what is essentially a

15

contract claim as a tort." *DeCoe v. Gen. Motors Corp.*, 32 F.3d 212, 216 (6th Cir. 1994).

The essence of Plaintiff's claim here is that the Union, in choosing not to take Plaintiff's grievance to arbitration: (1) acted with intent or reckless disregard for the probability of causing emotional distress, and (2) the decision not to take the grievance to arbitration was "extreme and outrageous conduct that no person in a civilized society should be expected to endure." ECF No. 13, PageID.104, ¶36.  This is, properly construed, a contract claim that Defendant breached the duty to fairly represent Plaintiff by failing to advance his grievance to arbitration.  To ascertain whether the Defendant violated a duty to advance to arbitration, the court would necessarily have to interpret the terms of the collective bargaining agreement.[7]

Plaintiff cannot avoid preemption by pleading state-law tort claims to indirectly allege a breach of the duty of fair representation.

---

[7] Plaintiff's untimely response to this argument reads, in full, "Plaintiff submits that the Federal Labor Law allows Plaintiff to pursue damages where Plaintiff has alleged failure of the union to represent him pursuant to it." ECF No. 15, PageID.147.  As explained, that conclusory statement is not sufficient to preserve a substantive objection to Defendant's argument.  But even on its own terms, it seems to admit that his IIED claim sounds in the "failure of the union to represent him."

Plaintiff's allegations against the Union Defendant are solely related to whether they fulfilled their duty to fairly represent him during his grievance proceedings.  His state law IIED claim is preempted by the LMRA and is subsumed by his duty of fair representation claim in Count V.[8]  That claim, meanwhile, is properly dismissed as untimely for the reasons explained above.

UAW's motion to dismiss is therefore granted.

## B.    Ford Motor Co. Motion To Dismiss

Next up is Defendant Ford Motor Co. ("Ford"), which appeared in this matter in March 2026, and subsequently filed a motion to dismiss on March 25, 2026.  ECF No. 25.  Plaintiff's response was due April 15, 2026.  E.D. Mich. LR 7.1(e)(2)(A).  No response, untimely or not, has been received.  As indicated above, the failure to respond to a motion to dismiss forfeits arguments against the issues raised in that motion.  *See Kondaur*, 802 F. App'x at 946.

---

[8] UAW's motion again discusses the alternative that Plaintiff is asserting a "hybrid" DFR/breach of contract claim under LMRA Section 301.  ECF No. 14, PageID.121.  Because Plaintiff waived any argument in response that his state law claim is preempted, the court finds that sufficient to dispose of his IIED claim.  Nonetheless, the court agrees with the alternative "hybrid" claim grounds advanced by Defendant for the reasons explained in their motion.

So the court turns to the motion.  Ford's argument is straightforward: all of Plaintiff's claims are time-barred or he failed to exhaust his administrative remedies.  As they put it: "Plaintiff alleges that his employment, which began at Ford in March of 2019, ended with his discharge in June of 2019, and all alleged conduct forming the basis of his claims occurred during that period.  Plaintiff did not file suit until October 21, 2025, more than six years later.  Each claim asserted against Ford carries a limitations period that expired years before this lawsuit was filed."  ECF No. 25, PageID.178.  First, his Section 1981 claims accrued in 2019, are barred by the applicable four-year statute of limitations established in 28 U.S.C. § 1658 because the limitations period expired no later than 2023.  *See Jones v. R. R. Donnelley & Sons Co.*, 541 U.S. 369, 383 (2004).  Second, Plaintiff failed to exhaust his administrative remedies under the ADA because he never filed an ADA charge, contacted the EEOC, or received a right-to-sue letter.[9]  Third,

---

[9] The ADA incorporates Title VII's charge-filing requirements.  *See* 42 U.S.C. § 12117(a).  Accordingly, a plaintiff must file a charge of discrimination within 300 days of the alleged unlawful employment practice.  42 U.S.C. § 2000e-5(e)(1).  A civil action cannot proceed unless the plaintiff has exhausted administrative remedies, including a receipt of a right-to-sue notice.  *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 309 (6th Cir. 2000).  An untimely or absent charge generally deprives a plaintiff of the ability to bring an ADA claim in federal court.  *See Hoover v.*

18

Plaintiff's ELCRA race discrimination claims are barred by Michigan's three-year statute of limitations found in Mich. Comp. Laws § 600.5805(2).  *See Garg v. Macomb Cnty. Cmty. Mental Health Servs.*, 472 Mich. 263, 284 (2005).  Finally, Plaintiff's IIED claim is likewise barred by the three-year statute of limitations in § 600.5805(2).  *See Nelson v. Ho*, 222 Mich. App. 74, 85 (1997).

The court starts with Plaintiff's federal claims, beginning with § 1981, and agrees with Ford's arguments.  Plaintiff makes no allegations as to discriminatory or retaliatory conduct by Ford in his Amended Complaint after he was terminated in 2019,[10] aside from one allegation regarding an administrative interaction in December 2023. In that allegation, he references a December 4, 2023 comment made by

---

*Timken Co.*, 30 F. App'x 511, 513 (6th Cir. 2002); *see also Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982) ("[F]iling a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling.").  Ford points out that the FAC does not allege that: (1) Plaintiff filed an ADA charge, (2) that he contacted the EEOC, (3) that he received a right-to-sue letter, or (4) that he pursued any ADA-related administrative process.  In the alternative, Ford also argues that the ADA's statute of limitation has run; the court does not address that alternative theory.

[10] On the court's reading, the Amended Complaint does not actually make any nonconclusory allegations as to any discriminatory or retaliatory conduct at all, even prior to his termination.  *See* ECF No. 13, PageID.102.  Because the exhaustion of remedies argument resolves the point, this alternative ground is not necessary to address further.

a Ford employee noting that Plaintiff "is one of the Plaintiffs at 4763." ECF No. 13, PageID.102, ¶23.  But no part of that allegation is tied to Ford's alleged discriminatory treatment during his employment in 2019; it does not constitute an adverse employment action and does not revive claims that expired years earlier.  No discriminatory or retaliatory action is alleged within the four-year statute of limitations for § 1981, and those claims must be dismissed for failure to state a claim.

As to the claims under the ADA, by failing to respond to Defendant's arguments that Plaintiff never filed an EEOC charge nor otherwise exhausted his administrative remedies under the ADA, Williams waived contrary arguments on the motion to dismiss.  The filing of a timely discrimination charge with the EEOC, and administrative exhaustion, are mandatory claim-processing rules that "a court must enforce . . . if a party properly raises it." *Fort Bend Cty. v. Davis*, 587 U.S. 541, 549 (2019) (internal quotation marks, brackets, and citation omitted); *Kilpatrick v. HCA Human Res., LLC*, 838 F. App'x 142, 146 (6th Cir. 2020).

However, in the court's view, it was not clear from the face of the complaint whether Plaintiff did exhaust or failed to exhaust his administrative remedies for his ADA claims, because he did not address that point in his complaint at all.  *See Bushong v. Del. City Sch. Dist.*, 851 F. App'x 541, 545 (6th Cir. 2021); *see Nyarko v. Bullitt Cty. Bd. of Educ.*, No. 3:25-cv-00186, 2025 LX 19930, at \*7 (W.D. Ky. May 7, 2025) (declining to dismiss complaint for failure to exhaust when plaintiff "neither pleaded allegations as to whether she exhausted administrative remedies, nor has she presented information regarding whether she has exhausted administrative remedies in response to Defendant's motion to dismiss.").  Nor was he required to include such allegations; Plaintiffs do not have to affirmatively set out facts to rebut an affirmative defense.  *VCST Int'l B.V. v. Borgwarner Noblesville, LLC*, 142 F.4th 393, 399 (6th Cir. 2025).  So because this affirmative defense based on administrative exhaustion necessarily brought in evidentiary matters outside the pleadings, Defendant's motion as to this argument is more properly considered under Rule 56 for summary judgment.  *See Bushong*, 851 F. App'x at 545 ("When a court considers matters outside the pleadings, 'the motion must be treated as one for

21

summary judgment under Rule 56 [and] [a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.'") (quoting Fed. R. Civ. P. 12(d)).  The court may convert a Rule 12(b)(6) motion into a Rule 56 motion, but the Sixth Circuit instructs that *sua sponte* conversion "should be exercised with caution and attention to the parties' procedural rights."  *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 487 (6th Cir. 2009) (citation modified).  The court thus notified the parties that it planned to treat Ford's argument regarding administrative exhaustion as a motion for summary judgment, and offered Plaintiff an additional 10 days to file a response.  *See* Text Only Order entered April 24, 2026; *Tackett*, 561 F.3d at 487 ("In the Sixth Circuit, before a district court may convert the motion *sua sponte*, the district court must afford the party against whom *sua sponte* summary judgment is to be entered ten-days notice and an adequate opportunity to respond.") (internal quotation and quoting citation omitted).  A response was therefore due on May 4, 2026.  *See id.*

Plaintiff again failed to file a response, and so forfeited his opportunity to present evidence on summary judgment showing that he

did file a timely EEOC charge, and waived any other arguments in response.  Because the timely filing of a charge and administrative exhaustion are mandatory claims-processing rules once raised, and potential exceptions to that rule (such as estoppel or equitable tolling) were forfeited by failure to file a response, Ford is entitled to summary judgment on the ADA claim (Count II).

Plaintiff's claims under Counts I and II for violations of § 1981 each fail to state a claim upon which relief can be granted against Ford. Defendant is entitled to summary judgment on Plaintiff's claims under Counts I and II for violations of the ADA.  The court does not address Ford's alternative argument regarding the ADA's statute of limitations.

Because this case arises under federal question jurisdiction, and each of the federal counts against Ford (Counts I and II) have been dismissed or judgment will be granted to Defendant, the court declines to exercise supplemental jurisdiction over Plaintiff's state law claims in Counts III and IV.  *See Brown v. Cassens Transp. Co.*, 546 F.3d 347, 363 (6th Cir. 2008) ("[A] federal court should typically decline to exercise pendent jurisdiction over a plaintiff's state-law claims after dismissing the plaintiff's federal claims.").

Ford's motion to dismiss (or construed in part as a motion for summary judgment) is therefore granted in its entirety, but Counts III and IV will be dismissed without prejudice for lack of jurisdiction as to Ford.

## C.   Defendant AFL-CIO and Plaintiff's Response to Orders to Show Cause

Having dealt with the Motions to Dismiss, the court turns to a different problem.  In addition to UAW and Ford, the complaint named AFL-CIO as a Defendant in this matter, which to date has not appeared in this action.  Plaintiff filed this case on June 20, 2025, but seeing no activity on the docket from any defendant, or proof of service after the time for service had expired under Fed. R. Civ. P. 4(m), the court ordered Plaintiff to show cause why this case should not be dismissed in its entirety for failure to prosecute.  ECF No. 3 (September 26, 2025).

Before a response to that order was due, Defendant UAW appeared and filed a motion to dismiss.  ECF No. 5, 7.  When Plaintiff did respond to the show cause order, Plaintiff said "granting the Motion to Dismiss without the Court's being properly advised in the premises would result in manifest injustice to the parties and contribute to the

24

inefficient administration of justice.  Specifically, all Defendants have been served via certified mail, return receipt requested and all have contacted Plaintiff's counsel.  Counsel is in the process of exchanging Waivers in Substitute of Service with counsel for the Union Defendant and the Defendant Ford Motor Company has responded via a Motion to Dismiss."  ECF No. 10, PageID.94.  Satisfied at that time that Plaintiff was taking action to serve all Defendants or get waivers of service and that progress was forthcoming, the court vacated that show cause order. ECF No. 11.

However, while UAW began to litigate this case, neither other Defendant appeared, nor did Plaintiff appear to take any action as to those Defendants.  The court therefore again ordered Plaintiff to show cause why this action should not be dismissed for failure to prosecute as to Ford and AFL-CIO.  ECF No. 16 (December 10, 2025).  Curiously, Plaintiff again said: "granting the Motion to Dismiss without the Court's being properly advised in the premises would result in manifest injustice to the parties and contribute to the inefficient administration of justice.  Specifically, all Defendants have been served via certified mail, return receipt requested and all have contacted Plaintiff's counsel.

25

Counsel has caused Waivers in Substitute of Service to be forwarded with counsel for the Union Defendant and the Defendant Ford Motor Company has responded via a Motion to Dismiss, which Plaintiff has responded and for which Defendant Ford Motor Company has filed a reply.  In the interim, Plaintiff's Counsel has engaged in discussions with Defendants' counsel in an attempt to resolve the matter short of completing litigation."  ECF No. 18, PageID.158.  This response was almost identical to the prior response.  The only new addition was that counsel had allegedly engaged in discussions in an attempt to resolve this matter.  *Id.*

Several points merit addressing.  Although Plaintiff alleges that both Defendants were "served" by certified mail, return receipt requested, it is well-established that certified mail is not a proper way to serve a corporation in Michigan.  *See, e.g.*, *Quinable, Inc. v. Bloomfield Hills SNF, LLC*, No. 23-cv-12624, 2024 U.S. Dist. LEXIS 190191, 2024 WL 4529551, at *3 (E.D. Mich. Oct. 18, 2024) (collecting cases).  Michigan's rules for service of process on a voluntary association similarly require personal service.  *See* Mich. Ct. R. 2.104(E).  Perhaps it is in recognition of that fact that counsel alleged he engaged in the

exchange of waivers of service.  However, on the lack of evidence before

it, the court does not credit Plaintiff's bare assertion that service or

waiver of service occurred as to AFL-CIO.  Under Federal Rule of Civil

Procedure 4(d)(4), proof of a waiver must be filed with the court; none

has been filed.  And under Rule 4(l), unless service is waived, proof of

service must be provided to the court.  No affidavit of service was filed

under that rule either.  AFL-CIO has not appeared, though it is a

sophisticated party capable of filing an appearance, further suggesting

that proper service was never effected.[11]  Tellingly, Plaintiff has not

sought entry of default against AFL-CIO, even though if they were

properly served or waived service, the time to answer has long since

expired.

Under Rule 4(m), if a defendant is not served within 90 days after

the complaint is filed, the court—on motion or on its own after notice to

the plaintiff—must dismiss the action without prejudice against that

defendant.  The court twice asked Plaintiff to show their work in

---

[11] Granted, UAW appeared even though no certificate of service, affidavit of service, or proof of waiver was ever filed as to UAW.  Still, the court's warnings should have put Plaintiff on notice that the court required proof of service or other evidence of prosecution as to the remaining Defendants.

prosecuting this case and securing service upon the non-appearing Defendant, and to date Plaintiff has not filed a single document proving that the non-appearing Defendant was properly served or, if they were, has not sought default against them with accompanying documentation. Plaintiff also did not file a motion for alternate service at any time in the last six months.  As to general prosecution of this case, Plaintiff's latest response to the court's show cause orders indicated no real update after over sixty days passed from the prior show cause order, and the court has seen no evidence that Plaintiff has taken any action as to AFL-CIO.  Given two warnings, and a total lack of substantive progress, the court will dismiss AFL-CIO without prejudice pursuant to Rule 4(m) for failure to effect service of process within 90 days and pursuant to Rule 41(b) for failure to prosecute.

## V.    CONCLUSION

Therefore, the court **GRANTS** UAW's motion to dismiss (ECF No. 14) and Ford's motion to dismiss (ECF No. 25).  UAW's motion is granted with prejudice in its entirety, and Counts IV and V are both dismissed with prejudice against UAW.  Ford's motion to dismiss is granted with prejudice as to Counts I and II under § 1981, and

judgment is granted in Ford's favor as to the ADA claims under Counts I and II, but Ford's motion is granted without prejudice as to Counts III and IV for lack of jurisdiction.

In addition, pursuant to Fed. R. Civ. P. 4(m) and 41(b), AFL-CIO is **DISMISSED** without prejudice for failure to prosecute. This order thus adjudicates all claims in this case and a final order of judgment dismissing this case will follow.

**SO ORDERED**.

Date: May 6, 2026                     s/F. Kay Behm
                                      F. Kay Behm
                                      United States District Judge

29